IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONALD HULL | § | |
|     TDCJ-CID #673637 | § | |
| V. | § | C.A. NO. C-05-043 |
| | § | |
| R. FORD, ET AL. | § | |

## MEMORANDUM AND RECOMMENDATION
## TO DISMISS CERTAIN CLAIMS AND TO RETAIN CERTAIN CLAIMS

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C.
§ 1983.  Plaintiff has been granted leave to proceed *in forma pauperis* (D.E. 9),
though his action is subject to screening under 28 U.S.C. § 1915A regardless
whether he prepays the entire filing fee or proceeds as a pauper.  Ruiz v. United
States, 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); Martin v. Scott, 156 F.3d
578, 580 (5th Cir. 1998) (per curiam).  Plaintiff's *pro se* complaint must be read
indulgently, Haines v. Kerner, 404 U.S. 519, 520 (1972), and his allegations must be
accepted as true, unless they are clearly irrational or wholly incredible.  Denton v.
Hernandez, 504 U.S. 25, 33 (1992).  Applying these standards, it is respectfully
recommended that the Court retain: (1) plaintiff's failure to protect claims against
Officer Bolech and Officer Loehr; and  (2) plaintiff's deliberate indifference to
serious medical needs claims against Officer Jane Doe 1, Dr. Coronado and Nurse
Gutierrez.  It is recommended that plaintiff's remaining claims be dismissed with
prejudice.

I.    **JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

II.   **FACTUAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is presently incarcerated at the Stiles Unit in Beaumont, Texas, though this action concerns events that occurred while plaintiff was incarcerated at the Garza West Transfer Facility in Beeville, Texas.  In his original complaint, (D.E.1), and first amended complaint, (D.E. 12),[1] plaintiff alleged civil rights claims against the following Garza West officials or employees:  (1) Assistant Warden Ford; (2) Major Gordy; (3) Dr. J. Coronado; (4) Nurse Gutierrez; (5) Officer Bolech; (6) Officer Y. Armedirez; (7)  Officer P. Loehr; (8) Sergeant Wolff; (9) Officer Briseno; (10) Lieutenant Eles; (11) K.C. Longoria, grievance investigator; (12) Officer Jane Doe 1 (unknown Hispanic female guard) and (13) Officer Jane Doe 2 (unknown female supervising guard).

On May 9, 2005, service was ordered on seven of the thirteen Garza West defendants: Warden Ford, Major Gordy,  Dr. Coronado, Officer Bolech, Officer

_____

[1] In his original complaint, plaintiff also alleged civil rights claims against nine prison officials and employees alleged to have worked at the Goree Unit; those claims were severed and transferred. See (D.E. 18).  In a supplemental complaint, (D.E. 39), plaintiff alleged claims against eleven Coffield Unit employees and two Boyd Unit employees.  Those claims were also severed and transferred. See (D.E. 60).

Loehr, and the Jane Doe defendants.  <u>See</u> (D.E.  22).  On June 10, 2005, Warden

Ford, Major Gordy, Dr. Coronado, Officer Bolech, and Officer Loehr filed their

answer.  <u>See</u> (D.E. 44).

 A <u>Spears</u> hearing was conducted on August 12, 2005 in this case.[2]  The

following allegations were either made in plaintiff's original complaint, amended

complaint, or at the hearing.

Plaintiff, who is homosexual, arrived at the Garza West Transfer Unit on

March 3, 2004.  For the first three days he was confined in administrative

segregation.  On March 5, 2004, plaintiff appeared before the Unit Classification

Committee ("UCC") and requested that he be transferred to safekeeping.  Plaintiff's

request was denied, and he was placed in general population.

On March 15, 2004, plaintiff filed a grievance with grievance investigator

R.C. Longoria complaining that the UCC had erred in assigning him to general

population.  Plaintiff alleged that his life was in danger as gang members of both

the Mexican Mafia and the Crips were in general population and that he had  been

assaulted by such gang members in the past.  Plaintiff was not transferred out of

general population.

---

[2] <u>See</u> <u>Spears v. McCotter</u>, 766 F.2d 179 (5th Cir. 1985); <u>see</u> <u>also</u> <u>Eason v. Holt</u>, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a  <u>Spears</u> hearing is incorporated into the pleadings).

## A.      The Gang Assault.

On April 29, 2004, seven Crip gang members and twelve Mexican Mafia gang members approached plaintiff, knocked him to the ground, and asked him who he was "riding with."  Plaintiff claims that he was assaulted for 10 minutes (the "gang assault"), and for half of that time, two guards were present on Unit A, but they both failed to notice the assault.  Finally, defendant Officer Jane Doe 1, a Hispanic, female guard, came onto the Unit and the assault stopped.  Officer Jane Doe 1 did not reprimand or segregate any of the gang members, nor did she administer any aid to plaintiff.  Plaintiff claims that he was bleeding and in pain, with wounds to his nose, bottom lip, and left eye.  The left-side of his face was swollen and bruised.  Despite his obvious injuries, Officer Jane Doe did not transport plaintiff to the infirmary.  Plaintiff complains that, as a result of this incident, he continues to suffer frequent headaches, nightmares, and psychological trauma.

## B.      Assault By Officer Bolech.

On April 10, 2004, plaintiff learned that he was a "target" for a staff use of force.  Plaintiff filed grievances complaining that Officer Armedirez, Officer Loehr, Officer Guetierrez, Sergeant Wolff, and Officer Briseno[3] were threatening and

---

[3] At the Spears hearing, plaintiff testified that he no longer desired to pursue any claims against Officer Briseno, and orally moved to dismiss those claims.  Thus, it is respectfully recommended that plaintiff's claims against Officer Briseno be dismissed.

harassing him.  The grievances were sent to K.C. Longoria and Warden Ford.

Following plaintiff's filing of the grievance, Officer Armedirez harassed and

threatened plaintiff.  Plaintiff told Sergeant Wolff, who did nothing to stop the

harassment.

On April 20 and 27, 2004, Officer Loehr filed false disciplinary charges

against plaintiff in retaliation for plaintiff filing a grievance against Officer

Armedirez.

On May 26, 2004, Officer Bolech attacked plaintiff with an ink pen.  Plaintiff

claims that he was lying in his bed when Officer Bolech approached him and began

stabbing him.  The assault lasted for approximately five minutes.  For the last two

minutes, Officer Loehr saw plaintiff being attacked, but did nothing to stop the

assault.  After Officer Bolech and Officer Loehr left plaintiff's cell, plaintiff

reported the assault to an unidentified female guard, Officer Jane Doe 2.  Plaintiff

waited another ten minutes until two guards approached and reported that a

supervisor was on the way.

Lieutenant Eles arrived ten minutes later, but had neither a stretcher nor

wheelchair.  He  escorted plaintiff, who was bleeding and in pain, to the D-space

area, but not to the infirmary.  Plaintiff claims that he suffered stab wounds to his

right leg and was  in need of immediate medical attention.  Plaintiff was seen by Dr.

Coronado and Nurse Gutierrez in the D-space area, but Dr. Coronado did not arrange for plaintiff to be escorted to the infirmary for at least 15 minutes.   Dr. Coronado and Nurse Gutierrez kept plaintiff on the Unit, but did not bandage plaintiff's wounds or give him medication for the pain.

### C.    Summary Of Claims.

Plaintiff complains that Warden Ford and Major Gordy were aware of the dangerous conditions in general population, but failed to correct them, in deliberate indifference to his health and safety.  He also claims that these defendants failed to properly train or supervise correctional officers.  Plaintiff further claims that Officer Jane Doe 1 was deliberately indifferent to his serious medical needs when she failed to render aid, or take him to the infirmary following the April 29 gang assault.

Plaintiff claims that Officer Bolech used excessive force against him, and that Officer Loehr observed the May 26 assault, but failed to protect him from Officer Bolech.  He also claims that Officer Jane Doe 2, Lieutenant Eles,  Dr. Coronado, and Nurse Gutierrez failed to ensure that he received proper medical attention following the assault by Officer Bolech, in deliberate indifference to plaintiff's serious medical needs.  He claims that Dr. Coronado, and Nurse Gutierrez  delayed his being transferred to the infirmary, causing him unnecessary pain and

complications to the treatment of the stab wounds.  He further claims that Officer

Armedirez, Officer Loehr, and Sergeant Wolff threatened and harassed him, and

that Officer Loehr retaliated against him.  Finally, he complains that K.C. Longoria

failed to investigate his grievances properly.

Plaintiff has sued defendants in their official and individual capacities.  He

seeks money damages for his "reasonable and necessary" past and future medical

expenses, as well as damages for his pain and suffering, physical disfigurement,

and mental anguish.

## III.   DISCUSSION

### A.   Excessive Use of Force Claims.

It has long been established that "[n]ot every push or shove, even if it may

later seem unnecessary in the peace of a judge's chambers, violates a prisoner's

constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973).

Indeed, as the Fifth Circuit has explained,  "[t]o prevail on an eighth amendment

excessive force claim, a plaintiff must establish that force was not 'applied in a

good-faith effort to maintain or restore discipline, [but] maliciously and sadistically

to cause harm,' and that he suffered an injury." Eason v. Holt, 73 F.3d 600, 601-02

(5th Cir. 1996) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  According to

the Fifth Cicuit, the factors to consider in evaluating an excessive force claim

7

include: "1. the extent of the injury suffered; 2. the need for the application of force;
3. the relationship between the need and the amount of force used; 4. the threat
reasonably perceived by the responsible officials; and 5. any efforts made to temper
the severity of a forceful response."  <u>Gomez v. Chandler</u>, 163 F.3d 921, 923 (5th
Cir. 1999).

The Fifth Circuit has emphasized that "*some* physical injury is an
indispensable element of an Eighth Amendment excessive force claim."  <u>Id.</u>
(emphasis in original).  To support an excessive force claim, " a prisoner must have
suffered from the excessive force a more than *de minimis* physical injury, but there
is no categorical requirement that the physical injury be significant, serious, or more
than minor."  <u>Gomez</u>, 163 F.3d at 924; <u>see also</u> <u>Siglar v. Hightower</u>, 112 F.3d 191,
193 (5th Cir. 1997).

Plaintiff alleges that Officer Bolech, unprovoked, repeatedly stabbed him in
the leg with a pen, puncturing his skin and causing plaintiff pain.  Assuming
plaintiff's allegations to be true, he has stated a claim of excessive force against
Officer Bolech.  Under the fact scenario provided, there was no need for the
application of force, and  Officer Bolech was not under any reasonable threat for
his own safety.  Plaintiff alleges injuries that are more than *de minimis.*  It is

respectfully recommended that plaintiff's excessive force claim against Officer

Bolech be allowed to proceed.[4]

**B.     Failure To Protect Claim.**

The deliberate indifference standard applies to cases involving allegation of

failure to protect an inmate from inmate violence.  The Supreme Court has

determined that "[d]eliberate indifference describes a state of mind more

blameworthy than negligence;" there must be "more than ordinary lack of due care

for the prisoner's interests or safety."  Farmer v. Brennan, 511 U.S. 825, 835 (1994)

(construing Estelle v. Gamble, 429 U.S. 97, 104 (1976).  "[P]rison officials have a

duty to protect prisoners from violence at the hand of other prisoners."  Cantu v.

Jones, 293 F.3d 839, 844 (5th Cir. 2002) (citing Farmer, 511 U.S. at 833).  Despite

this duty to protect, a "prison official may be held liable under the Eighth

Amendment for denying humane conditions of confinement only if he knows that

inmates face a substantial risk of serious harm and disregards that risk by failing to

take reasonable measures to abate it."  Farmer, 511 U.S. at 847.

Furthermore, a plaintiff is barred from recovering damages for mental

anguish absent a showing of physical injury.  42 U.S.C. § 1997e(e) (no federal civil

---

[4] Officer Bolech has already been served and filed an answer.

action can be brought for mental or emotional injury absent a showing of physical injury); <u>Jones v. Greninger</u>, 188 F.3d 322, 326 (5th Cir. 1999).

### 1.    *Warden Ford and Major Gordy.*

Plaintiff testified that he believed Warden Ford read a grievance that he sent to K.C. Longoria concerning his classification; however, he admitted that he had no personal knowledge of what Warden Ford personally knew about his claim for safekeeping.  Plaintiff then clarified that he believed Warden Ford should be held accountable for the gang assault by virtue of his position as warden.  He testified that he wrote to Major Gordy in April, *after* Officer Bolech had assaulted him, but he admitted that he never advised Major Gordy of his request for protective custody or told him of the earlier gang assault.  Based on these allegations, plaintiff is attempting to hold Warden Ford and Major Gordy liable under the theory of supervisory liability.

It is well settled that a plaintiff cannot obtain damages or injunctive relief from a policy-maker or supervisor solely on a theory of *respondeat superior*. <u>Beattie v. Madison County School Dist.</u>, 254 F.3d 595, 600 n.2 (5th Cir. 1983) (citing <u>Monell v. New York City Dep't of Soc. Servs.</u>, 436 U.S. 658, 690, 694 (1978)).  As the Fifth Circuit has determined, "[s]upervisory officials may be held liable only if: (i) they affirmatively participate in acts that cause constitutional

10

deprivation; or (ii) implement unconstitutional policies that causally result in plaintiff's injuries." Mouille v. City of Live Oak, Tex., 977 F.2d 924, 929 (5th Cir. 1992). A policy can be either one that is officially adopted or a "persistent, widespread practice" that is so common, it constitutes a policy. Burge v. St. Tammany Parish, 336 F.3d 363, 369 (5th Cir. 2003) (quoting Bennet v. City of Slidell, 735 F.2d 861, 862 (5th Cir. 1984) (per curiam)). "A claim of a violation of section 1983 pursuant to . . . a persistent, widespread practice . . . may in an appropriate case also encompass allegations that a policymaker failed to act affirmatively, including a failure adequately to train a subordinate." Id.

Plaintiff fails to establish that either Warden Ford or Major Gordy were aware of plaintiff's request for safekeeping. Moreover, the Fifth Circuit recently held in a failure to protect case that:

> given the size of the operation that they oversee, [supervisory officials] cannot be expected to intervene personally in response to every inmate letter they receive. The record in this case shows that they responded to [the plaintiff's] complaints by referring the matter for further investigation or taking similar administrative steps. This was a reasonable discharge of their duty to protect the inmates in their care.

Johnson v. Johnson, 385 F.3d 503, 526 (5th Cir. 2004). The fact that Warden Ford or Major Gordy did not personally respond to plaintiff's letters and grievances,

without more, does not state a claim.  It is respectfully recommended that plaintiff's

claims against Warden Ford and Major Gordy be dismissed.

### 2.    *K.C. Longoria.*

In his pleadings, plaintiff alleged that, after the UCC denied his request for

protective custody, he appealed the decision and it was denied.  He claims that he

filed subsequent grievances complaining of his placement in the general population,

and that K.C. Longoria failed to properly investigate his claims, or to even respond

to plaintiff's grievances, and that this failure, in part, contributed to the gang

assault.  At the <u>Spears</u> hearing, plaintiff testified that his claim against K.C.

Longoria was more properly characterized as a First Amendment claim for denial of

access to courts because K.C. Longoria failed to process properly plaintiff's

grievances.

Prisoners have a constitutionally protected right of access to the courts.  <u>See</u>

<u>Lewis v. Casey</u>, 518 U.S. 343, 360 (1996).  This right, however, encompasses only a

reasonably adequate opportunity to file nonfrivolous legal claims challenging their

convictions or conditions of confinement.  <u>Jones v. Greninger</u>, 188 F.3d 322, 325

(5th Cir. 1999) (citing <u>Lewis</u>, 518 U.S. at 351).  To show a denial of access to the

courts, a plaintiff must demonstrate that he suffered an "actual injury."  <u>Chriceol v.</u>

<u>Phillips</u>, 169 F.3d 313, 317 (5th Cir. 1999) (citing <u>Lewis</u>, 518 U.S. at 351-54).

12

In this case, plaintiff complains that his grievances were denied, or not answered.  However, plaintiff has no constitutionally protected right to prevail on his grievances, or  to receive a response from prison officials.  To the extent plaintiff alleges that K.C. Longoria violated TDCJ policy by not answering plaintiff's grievances, he fails to state a constitutional violation.   See Myers v. Klevenhagen, 97 F.3d 91, 94 (5th Cir. 1996) (TDCJ-ID's failure to follow its own administrative rules and regulations does not raise federal constitutional issues as long as minimal constitutional requirements are met); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986) (failure of prison officials to follow their own rules does not establish a constitutional violation).  It is respectfully recommended that plaintiff's claims against K.C. Longoria be dismissed.

### 3.    *Officer Loehr.*

Plaintiff claims that Officer Loehr witnessed Officer Bolech's assault on him for at least two minutes and did nothing.  Plaintiff's allegation, taken as true, states a claim for failure to protect against Officer Loehr.  Therefore, it is respectfully recommended that the Court retain this claim.[5]

---

[5] Officer Loehr has already been served and filed an answer.

13

### C.    Medical Care Claim

As the Supreme Court has explained, "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle, 429 U.S. at 105.  As the Fifth Circuit has noted, however, "[d]eliberate indifference is an extremely high standard to meet." Domino v. Texas Dep't of Criminal Justice, 239 F.3d 752, 756 (5th Cir. 2001).  "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (construing Estelle, 429 U.S. at 104).  To act with deliberate indifference, a prison official must both know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id.  In order to state a claim of inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle, 429 U.S. at 106.

A disagreement with the level and type of treatment is not actionable under the Eighth Amendment.  See id., 429 U.S. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995); Young v. Gray, 560 F.2d 201 (5th Cir. 1977).  An incorrect diagnosis does not state

14

an Eighth Amendment claim because the deliberate indifference standard has not been met. <u>Domino</u>, 239 F.3d at 756. A "plaintiff must show that the officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." <u>Id.</u> (quoting <u>Johnson v. Treen</u>, 759 F.2d 1236, 1238 (5th Cir. 1985)). However, delay in treatment may be actionable under § 1983 if there has been deliberate indifference and the delay results in substantial harm. <u>Mendoza v. Lynaugh</u>, 989 F.2d 191, 195 (5th Cir. 1993); <u>see also</u> <u>Stewart v. Murphy</u>, 174 F.3d 530, 537 (5th Cir. 1999); <u>Hudson v. McHugh</u>, 148 F.3d 859, 864 (5th Cir. 1998).

### 1.   *Officer Jane Doe 1.*

Plaintiff alleges that Officer Jane Doe 1 was deliberately indifferent to his serious medical needs when she failed to render aid, or take him to the infirmary after the gang assault. Plaintiff claims that he was bleeding and in pain, with wounds to his nose, bottom lip, and left eye, and that the left-side of his face was swollen and bruised. Taken as true, plaintiff's allegations state a claim of deliberate indifference against Officer Jane Doe 1, and it is respectfully recommended that this claim be retained.[6]

---

[6] Service was ordered on this defendant, but she has not filed an answer to date. It is recommended that the Attorney General takes the necessary steps to determine the identity of this

### 2.      *Lieutenant Eles and Officer Jane Doe 2.*

Plaintiff alleges that Lieutenant Eles and Officer Jane Doe 2 were deliberately indifferent to his serious medical needs because they failed to take him to the infirmary following Officer Bolech's attack.  He further claims that Nurse Martinez and Dr. Coronado did not conduct a proper examination, or properly treat his injuries.  He alleges that Dr. Coronado delayed his transportation to the infirmary which caused complications to his injuries.  Plaintiff states that, as a result of the delayed and inadequate medical care, the tissue and some of his ligaments are damaged, and he has uncontrolled shaking of the right leg.

Plaintiff's allegations against Lieutenant Eles and Officer Jane Doe 2 are insufficient because there is no evidence that they were aware of a serious medical need and ignored it.  Plaintiff admits that he was examined by Dr. Coronado after the attack, and thus received medical attention.  There are no facts to suggest that either Lieutenant Eles, or Officer Jane Doe 2, were deliberately indifferent to a serious medical need, and it is respectfully recommended that those claims be dismissed.

---

correctional officer based on the information provided by plaintiff, and that she be ordered to file her answer within thirty (30) days.

### 3. *Dr. Coronado and Nurse Gutierrez.*

Plaintiff  alleges that Dr. Coronado and Nurse Gutierrez were the first health care providers to see him after he was stabbed with a pen, but that their examination was cursory at best.  He claims further that they delayed his being transported to the infirmary, despite the fact that he was bleeding and in pain, and that Dr. Coronado refused to give him any pain medication.  Plaintiff claims that the delay caused permanent scarring, tissue and ligament damage to his right leg, and other complications.

Assuming as true plaintiff's statement of the facts, plaintiff has stated a claim of deliberate indifference against these two defendants.  It is respectfully recommended that plaintiff's claims of deliberate indifference against Dr. Coronado and Nurse Gutierrez be retained on the Court's docket.[7]

### D.    Retaliation Claim.

Plaintiff claims that Officer Loehr filed a false disciplinary case against plaintiff in retaliation for plaintiff filing a grievance against Officer Almedirez.  "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation."

---

[7] Dr. Coronado has already been served and has filed an answer.  It is recommended that Nurse Gutierrez be served and joined as a defendant in this suit.

McDonald v. Steward, 132 F.3d 225, 231 (5th Cir. 1998).  The inmate must be able to point to a specific constitutional right that has been violated.  Jones, 188 F.3d at 325.  The inmate must allege more than his personal belief that he is the victim of retaliation.  Johnson v. Rodriguez, 110 F.3d 299, 310 (5th Cir. 1997).  Conclusory allegations of retaliation are insufficient.  Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995).  Instead, "[t]he inmate must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred.'"  Id. (citation omitted).  Finally, causation requires an inmate to show that but for the retaliatory motive, the adverse action would not have occurred.  McDonald, 132 F.3d at 231.

Plaintiff's filing of a grievance against Officer Armedirez, on its face, does not provide a motive for Officer Loehr to retaliate against him.   It is respectfully recommended that plaintiff's retaliation claim against Officer Loehr be dismissed.

### E.    Harassment Claim.

Plaintiff alleges that Officer Armedirez, Officer Loehr, and Sergeant Wolff threatened and harassed him because he is a homosexual.

Verbal threats and name-calling by prison guards do not amount to a constitutional violation.  Robertson v. Plano City of Tex., 70 F.3d 21, 24 (5th Cir. 1995) (citation omitted); Bender v. Brumley, 1 F.3d 271, 274 n.4 (5th Cir. 1993)

(same).  Plaintiff alleges no facts to suggest that the conduct of these defendants was anything more than inappropriate.  It is respectfully recommended that plaintiff's claims of harassment be dismissed for failure to state a claim.

## IV.    RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the following claims be retained on the Court's docket:

A.      Plaintiff's claim of excessive force against Officer Bolech;

B.      Plaintiff's failure to protect claim against Officer Loehr; and

C.      Plaintiff's deliberate indifference claim against Officer Jane Doe 1, Dr. Coronado, and Nurse Gutierrez..

It is recommended that plaintiff's remaining claims against the other defendants be dismissed with prejudice pursuant to 42 U.S.C. § 1997e(c), 28 U.S.C. §§ 1915(e) and 1915A for failure to state a claim.

ORDERED this 29th day of August 2005.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1)(C), Rule 8(b)(3), Rules Governing § 2254 Cases, and Article IV, General Order No. 80-5, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendations in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).