IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

DONALD WAYNE HULL                   §
    TDCJ-CID #673637            §
V.                                  §        C.A. NO. C-05-043
                                 §
R. FORD, ET AL.                     §

**AMENDED MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Pending is defendants' motion for summary judgment to dismiss plaintiff's action for failure to exhaust administrative remedies, or alternatively, on the merits. (D.E. 83). Plaintiff has filed a response in opposition. (D.E. 119-23). For the reasons stated herein, it is respectfully recommended that defendants' motion for summary judgment to dismiss for failure to exhaust be denied. It is respectfully recommended that defendants' motion be granted as to plaintiff's claims against Officer Loehr and Dr. Coronado, and that those defendants be dismissed from this action. It is respectfully recommended that defendants' summary judgment motion be denied as to Officer Bolech, and that plaintiff's excessive force claims against this defendant proceed to trial.

# I.  JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

# II.  BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division, and is currently incarcerated at the Stiles Unit in Beaumont, Texas, although his claims concern events that occurred at the Garza West Transfer Facility in Beeville, Texas.  In his original and amended complaints, plaintiff alleged, *inter alia*, that on May 26, 2004, Officer J. Bolech assaulted him with an ink pen by stabbing it into his leg, and that Officer Loehr observed the assault, but did nothing to stop it.  (D.E. 1, 12).  He also claimed that Dr. Jose Coronado was deliberately indifferent to his serious medical needs following the alleged assault. Following an August 12, 2005 evidentiary hearing, certain of plaintiff's claims against other defendants were dismissed; plaintiff's Eighth Amendment claims against Officer Bolech, Officer Loehr, and Dr. Coronado were retained.  (D.E. 71). Defendants have raised the defense of qualified immunity.  (D.E. 44, 83).

# III.  SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following evidence:

2

Ex. A:        Plaintiff's grievance records from January 1, 2004 through May
              23, 2005;

Ex. B:        Affidavit of Gwen Stanford, Assistant Administrator of
              Offender Grievances;

Ex. C:        Report of the Office of the Inspector General ("OIG")
              investigating the alleged assault;[1] and

Ex. D:        Plaintiff's medical records from March 3, 2004 through May
              18, 2005.[2]

In opposition, plaintiff has offered his sworn affidavit and copies of
"unprocessed" grievances that he submitted.  See D.E. (119-23).  The following
facts are not in dispute:

On May 24, 2004, plaintiff was seen at the prison infirmary complaining of
nausea, vomiting, and dizziness.  DX-D at 159.  Moreover, his blood pressure was
elevated.  Id.  He was provided a lay-in pass giving him permission to not turn out
for work for the next three days.  Id.

On May 26, 2004 at approximately 9:00 a.m., Officer Bolech accompanied
Officer Loehr to A-Dorm to assemble laundry workers for the day.  DX-C at 9.

---

[1] The OIG report contains sworn statements from plaintiff, Officer Loehr, and Officer Bolech.

[2] "DX" refers to defendants' exhibits, followed by the appropriate letter and page reference. Reference to plaintiff's exhibits is by docket entry and number.

3

Officer Loehr went inside the dorm and called out plaintiff's last name and bunk number, and told plaintiff to turn out for work.  DX-C at 9, 12.

Officer Loehr returned to where Officer Bolech was standing and stated that plaintiff was going to get a disciplinary case for failing to turn out for work.  DX-C at 9.  After approximately ten minutes, Officer Bolech told Officer Loehr that he would try to get plaintiff up.  DX-C at 9.  Officer Bolech went to plaintiff's bunk and told him to wake up.  DX-C at 9-10.  He left plaintiff's bunk at approximately 9:37 a.m.  Id.  at 10.

Picket Officer Davis received a call from plaintiff over the speaker complaining that Officer Bolech had stabbed him with a pen and that he was bleeding from one of his legs.  DX-C at 22.  She told plaintiff she would send a roving officer to see him.  Id.  Officer Davis notified Officer Soliz and Officer Simpson to check on plaintiff, and she notified her supervisors of the incident.  Id.

Officer Soliz reported to plaintiff and observed that he was bleeding.  DX-C at 23.  Plaintiff told Officer Soliz that Officer Bolech had stabbed him with the pen.  Id.  Officer Soliz instructed plaintiff to go to the dayroom bench while he called for a supervisor.  Id.

At approximately 10:00 a.m., an unidentified offender approached Major Bryan Gordy and stated that Officer Bolech had stabbed plaintiff with an ink pen.

4

DX-C at 31.  Major Gordy and Sergeant Cirone went to the dayroom, and then plaintiff was escorted to the infirmary.  Id.

Plaintiff was seen at the infirmary at 10:26 a.m. by Dr. Coronado and Nurse Gonzalez.  DX-D at 157.  Upon examination, Dr. Coronado noted two very small lacerations over plaintiff's right lower thigh which measured about .75 centimeter in length, and a small laceration over the right lower leg laterally about .5 centimeter in length.  Id.  Plaintiff had good range of motion of his toes and his right foot, and strong Dorsalis pedis pulses.  Id.  Dr. Coronado's assessment was that plaintiff had "three very tiny lacerations over right leg."  Id.  The areas were scrubbed with antiseptic and steri-strips applied to all three lacerations.  Id.  Plaintiff was instructed to return to the infirmary in two days to change the dressing.  Id.

On May 27, 2004, plaintiff was seen in the infirmary at 7:51 a.m. in connection with a previous sick call request concerning front tooth pain.  DX-D at 155.  The infirmary staff scheduled plaintiff to see a dentist.  Id.  Later that same day, plaintiff submitted a sick call request complaining of low back pain and left knee pain.  DX-D at 156.  He was scheduled to be seen in the infirmary on May 28, 2004; however, he did not show up for that appointment.  DX-D at 152.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions.  Caboni v. General Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).  The Court may not weigh the evidence or evaluate the credibility of witnesses.  Id.  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein."  Fed. R. Civ. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay

evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 248-49.  "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted."  Caboni, 278 F.3d at 451.  "If reasonable minds could differ as to the import of the evidence ... a verdict should not be directed."  Anderson, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only

disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V.  DISCUSSION

### A.    Failure To Exhaust Administrative Remedies.

Defendants move for summary judgment to dismiss plaintiff's claims for failure to exhaust administrative remedies arguing that plaintiff failed to file a Step 1 or Step 2 grievance complaining about the alleged assault or in any other manner attempting to exhaust his administrative remedies.

Section 1997e(a) of Title 42 provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

The exhaustion requirement applies to *all* inmate suits about prison life, whether involving general circumstances or specific incidents.  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330-31 (5th Cir. 2002) (discussing Porter).  Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358

(5th Cir. 2001) (discussing <u>Booth</u>).  If an inmate chooses to file and pursue a lawsuit prior to exhausting administrative remedies, his suit must be dismissed with prejudice for purposes of proceeding *in forma pauperis.*  <u>Underwood v. Wilson</u>, 151 F.3d 292, 296 (5th Cir. 1998).

The Texas Department of Criminal Justice ("TDCJ") currently provides a two-step procedure for presenting administrative grievances.  Step 1 requires the prisoner to submit an administrative grievance at the institutional level.  <u>Wendell v. Asher</u>, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)).  After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator.  <u>Id.</u>  Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ.  <u>Id.</u>  After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for step 2 of the process, which is the director, deputy director, regional director, or assistant director.  <u>Id.</u>

The grievance procedure takes approximately ninety days to exhaust.  <u>Id.</u> Prisoners are allowed fifteen calendar days to file a step 1 grievance.  <u>Id.</u> (citing

TDCJ Admin. Directive No. AD-3.82 (rev. 1), Policy ¶ VI (Jan. 31, 1997)).  The
response to the step 1 grievance is due within forty days after receipt of the
grievance.  Id.  The prisoner then has ten days to submit an appeal.  Id.  The
response to the step 2 grievance is due within forty days after receipt of the
prisoner's appeal.  Id.  The TDCJ Inmate Grievance System provides that, if an
inmate does not receive a written decision within 180 days after filing the
grievance, he may proceed with his other state or federal court remedies.  Tex.
Gov't Code § 501.008(d)(2).

Regarding exhaustion, defendants argue:

> Plaintiff Hull did not file a Step 1 or Step 2 grievance
> concerning this event, and has therefore failed to exhaust
> his administrative remedies as required by the PLRA.

(D.E. 83 at 4).   In addition, defendants attach the affidavit of Gwen Stanford, the
Assistant Administrator of Offender Grievances, who states that the only processed
grievances plaintiff filed for the time period at issue are grievance number
2004176542, dealing with medical treatment not at issue in this case, and grievance
number 2004176622, complaining about staff retaliation.  DX-B, Stanford Aff.
She also states that a miscellaneous grievance, grievance number 2004177075, was
returned to plaintiff as unprocessed because it was in excess of the one grievance
per seven-day limit.  Id.

In his summary judgment response, plaintiff has submitted a grievance hand-dated June 7, 2004, complaining that on May 26, 2004, Officer Bolech[3] "stabbed him in the right leg with force three (3) times with his ink pen" and told him to turn-out for work, despite the fact that he had shown Officer Loehr his lay-in excuse. (D.E.123-1 at 28). On July 23, 2004, plaintiff submitted a Step 2 grievance complaining that his Step 1 grievance against Officer Bolech and Officer Loehr had not been answered. Id. at 31-32. Plaintiff's Step 2 grievance was returned on August 17, 2004, with the notation that it could not be processed without the corresponding original Step 1 grievance and answer. Id. at 30.

On July 26, 2004, plaintiff submitted a Step 1 grievance complaining that on May 26, 2004, he received inadequate medical care following a "staff assault" in which he was stabbed on his leg. See id. at 40; (D.E.123-2 at 1). The grievance is date-stamped July 27, 2004, over plaintiff's signature. At the bottom of the second page, it indicates that the grievance was returned for the following reason: "Inappropriate (request is for employee disciplinary action or consequential or punitive damages). (D.E. 123-2 at 1).

---

[3] In his first grievance, plaintiff spelled Bolech's name "Bullock," but corrected the spelling in subsequent grievances.

On July 30, 2004, plaintiff filed a Step 2 grievance appealing the denial of the Step 1 grievance.  <u>Id.</u> at 3-4.  On August 23, 2004, plaintiff's Step 2 grievance was returned unprocessed with a notation that a Step 2 grievance could not be submitted regarding an unprocessed Step 1 grievance.  <u>Id.</u> at 2.

The primary purpose of the exhaustion requirement is to provide prison officials with "'time and opportunity to address complaints internally'."  <u>Johnson v. Johnson</u>, 385 F.3d 503, 516 (5th Cir. 2004) (quoting <u>Porter</u>, 534 U.S. at 525).  In this case, plaintiff states under penalty of perjury that he filed a Step 1 grievance complaining of the assault and officers Bolech and Loehr, but did not receive a response.  (D.E. 123-2 at 5).  He then submitted a Step 2 appeal, but it was returned unprocessed because his Step 1 grievance was not attached.  Plaintiff explains that he could not have attached his Step 1 grievance to his Step 2 appeal because it was never answered or returned.  It is evident that plaintiff attempted to exhaust his administrative remedies.

Although the Fifth Circuit has taken a "strict approach" to the exhaustion requirement, it "'may be subject to certain defenses such as waiver, estoppel, or equitable tolling.'"  <u>Days v. Johnson</u>, 322 F.3d 863, 866 (5th Cir. 2003) (per curiam) (quoting <u>Wendell</u>, 162 F.3d at 890).  For example, the exhaustion requirement may be excused when its administrative remedies are not "personally

available." Id. at 867.  Unavailability can occur when physical injury prevents its use, see id., or when prison officials ignore or interfere with the prisoner's pursuit of relief, see Underwood, 151 F.3d at 295.  Here, plaintiff claims that officials never answered his Step 1 grievance concerning officers Bolech and Loehr. Plaintiff's evidence of his Step 1 grievance and sworn statement provide evidence that he placed prison officials on notice of his claims.  Moreover, it is uncontested that defendants had notice of plaintiff's claims as the OIG conducted an investigation into the incident.  See DX-C.

Concerning Dr. Coronado, plaintiff filed a Step 1 grievance complaining about the medical care he received after the alleged assault, but it was returned as "inappropriate," ostensibly because plaintiff was seeking damages.  Thereafter, plaintiff's related Step 2 grievance was denied because his Step 1 grievance was unprocessed.

Clearly, plaintiff neither ignored nor attempted to by-pass the prison grievance system before filing his lawsuit.  He filed both Step 1 and Step 2 grievances providing notice to prison officials of his claims.  Indeed, the prison officials were on notice due to the OIG investigation.  Plaintiff has met his burden of giving sufficient notice to prison officials of the basis of his claims.  Thus, it is

respectfully recommended that defendants' motion for summary judgment to dismiss plaintiff's claims for failure to exhaust be denied.

**B.      Claims Against Defendants In Their Official Capacities.**

Plaintiff is seeking monetary and punitive damages, in an unspecified amount.

A suit against a prison employee in his official capacity is the same as a suit against the entity the employee represents.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985).  The Eleventh Amendment bars a suit for money damages against a state or state agency.  See id. at 168-69.  A judgment may not be entered against a state officer in his official capacity for past violation of federal law, although prospective relief may be granted.  Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc., 506 U.S. 139, 146 (1993).

To the extent plaintiff is suing defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment.  Thus, it is respectfully recommended that defendants' motion for summary judgment to dismiss plaintiff's claims against them for money damages in their official capacities be granted, and those claims dismissed with prejudice.

## C.     Defense Of Qualified Immunity.

Defendants move for summary judgment on the grounds of qualified immunity.  The qualified immunity determination involves a two-step analysis. First, the Court must consider "'whether the facts alleged, taken in the light most favorable to the party asserting the injury, show that the officer's conduct violated a constitutional right.'"  Mace v. City of Palestine, 333 F.3d 621, 623 (5th Cir. 2003) (citations omitted); see also Saucier v. Katz, 533 U.S. 194, 201 (2001) (threshold question in qualified immunity analysis is whether a constitutional right would have been violated on the facts alleged).  If a constitutional violation is alleged, then the Court must next determine "whether the right was clearly established – that is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 624.  Once defendants have invoked the defense of qualified immunity, the burden shifts to plaintiff to show that the defense is inapplicable.  McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam).

### 1.     Excessive Force.

Plaintiff contends that Officer Bolech used excessive force against him when he stabbed him in the leg.

### a.    Step 1: Constitutional violation.

It has long been established that "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973). Indeed, as the Fifth Circuit has explained, "[t]o prevail on an eighth amendment excessive force claim, a plaintiff must establish that force was not 'applied in a good-faith effort to maintain or restore discipline, [but] maliciously and sadistically to cause harm,' and that he suffered an injury." Eason v. Holt, 73 F.3d 600, 601-02 (5th Cir. 1996) (quoting Hudson v. McMillian, 503 U.S. 1, 7 (1992)).  According to the Fifth Circuit, the factors to consider in evaluating an excessive force claim include: "1. the extent of the injury suffered; 2. the need for the application of force; 3. the relationship between the need and the amount of force used; 4. the threat reasonably perceived by the responsible officials; and 5. any efforts made to temper the severity of a forceful response." Gomez v. Chandler, 163 F.3d 921, 923 (5th Cir. 1999) (citation omitted).

The Fifth Circuit has emphasized that "*some* physical injury is an indispensable element of an Eighth Amendment excessive force claim." Id. (emphasis in original).  To support an excessive force claim, "a prisoner must have suffered from the excessive force a more than *de minimis* physical injury, but there

is no categorical requirement that the physical injury be significant, serious, or more than minor." Id. at 924; see also Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997).

Plaintiff has testified under penalty of perjury that Officer Bolech, unprovoked, repeatedly stabbed him in the leg with a pen, puncturing his skin and causing him pain. (D.E. 120-2 at 34). Moreover, the uncontested facts establish that Officer Bolech was alone with plaintiff on the morning of May 26, 2004: the picket officer confirmed that she let Officer Bolech and Officer Loehr into A dorm (DX-C at 22), and Officer Loehr testified that Officer Bolech went to plaintiff's bunk to try to wake him up, while he stayed at O space. DX-C at 18-20. Officer Bolech testified that he attempted to wake-up plaintiff and that he "tapped" plaintiff on his leg with an ink pen. DX-C at 9. Shortly after Officer Bolech exited the dorm, plaintiff reported the alleged assault over the speaker to Officer Davis. DX-C at 22. Officer Soliz, the first officer to arrive at plaintiff's bunk, observed blood on plaintiff's pant leg. DX-C at 23. Sergeant Cirone also observed the blood on plaintiff's pant leg. DX-C at 35. Plaintiff's medical records reveal that plaintiff had three tiny lacerations on his leg. DX-D at 8. Taken the facts in the light most favorable to plaintiff, he has stated a claim of excessive force against Officer Bolech.

### b.    Step 2: Objective reasonableness.

For a right to be clearly established under the second step of the qualified immunity analysis, "[t]he contours of that right must be sufficiently clear that a reasonable officer would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987).  "The central concept [of the test] is that of fair warning: The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights.  Hope v. Pelzer, 536 U.S. 730, 740 (2002).  Even officers who interpret the law mistakenly but reasonably are entitled to immunity.  See Anderson, 483 U.S. at 641.

Officer Bolech does not suggest that any legal principle involved was not clearly established at the time of the use of force.  Thus, whether his actions were objectively reasonable depends on whether his attempt to wake plaintiff with a pen "was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm."  Hudson, 503 U.S. at 5 (citation omitted).

It is uncontested that the morning of the alleged assault, plaintiff had a lay-in pass to not report to work.  DX-D at 159.  He claims that he showed his pass to

18

Officer Loehr.  Plaintiff claims that, after he returned to his bunk and was attempting to sleep, Officer Bolech came to his bunk and stabbed him three times with the pen, and told him to get up.  (D.E. 120-2 at 34).

Officer Bolech argues that there is no genuine issue of a material fact because, subsequent to the alleged assault, plaintiff took a polygraph test which indicated "deception" when plaintiff was questioned about who caused the injury to his leg.  DX-C at 15.  In addition, Officer Bolech offers the report of the OIG investigator, Jesse Martinez, who examined plaintiff's lacerations and opined that they were not "puncture" wounds, but more likely inflicted by a sharp object, like a razor.  DX-C at 4, 17.  Investigator Martinez' observations, however, do not refute plaintiff's claim that his injuries were caused by Officer Bolech stabbing him with a pen.  Assuming the facts in the light most favorable to plaintiff, it cannot be said that Officer Bolech's actions were objectively reasonable.  There are genuine issues of material fact regarding the need for an application of force and the relationship between the need and the amount of force used.  Thus, fact issues preclude the entry of summary judgment on Officer Bolech's defense of qualified immunity.  As such, it is respectfully recommended that defendants' motion for summary judgment as to Officer Bolech be denied.

### 2.     Failure To Protect.

Plaintiff argues that Officer Loehr observed Officer Bolech assault him, but failed to intervene or stop the assault.

Prison officials may be liable under the Eighth Amendment if they are deliberately indifferent to the health and safety of the inmates under their charge. Farmer v. Brennan, 511 U.S. 825, 834, (1994).  The deliberate indifference standard "describes a state of mind more blameworthy than negligence."  Id. at 835.  To act with deliberate indifference, a prison official must both know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference.   Id. at 837.  The reason for focusing on the official's mental attitude is to isolate those defendants who inflict punishment.  Id. at 839.  Deliberate indifference may be inferred from the fact that the risk of harm is obvious.  Hope, 536 U.S. at 738.

Essential to plaintiff's failure to protect claim is evidence that the defendant *knew of* a substantial risk of harm to the plaintiff.  Farmer, 511 U.S. at 847.  In this case, Officer Loehr contends that he was not even in the same room with Officer Bolech and plaintiff at the time of the alleged assault, but instead, was waiting in O space.  DX-C at 18.  However, even if Officer Loehr were present in the same area

as plaintiff and Officer Bolech when the alleged assault occurred, plaintiff has

failed to offer any evidence to suggest that, up until the alleged assault, Officer

Bolech posed any risk of harm to him and that Officer Loehr was aware of that

risk.  Plaintiff does not suggest, let alone demonstrate, that he and Officer Bolech

had any past animosity between them, that Officer Bolech had ever threatened him

in the past, or that the intensity or duration of the alleged assault was so significant

that Officer Loehr should have been put on notice.  There is simply no evidence

that Officer Loehr was aware of a substantial risk of harm to plaintiff's health and

safety, and then ignored that risk.  Thus, plaintiff fails to state a constitutional

violation against this defendant, and the Court need not examine whether Officer

Loehr's actions were reasonable under the circumstances.  See Saucier, 533 U.S. at

201 (if the facts alleged do not establish that the officer's conduct violated a

constitutional right, then the qualified immunity analysis need proceed no further

and qualified immunity is appropriate).  As such, it is respectfully recommended

that defendants' motion for summary judgment to dismiss plaintiff's claims against

Officer Loehr be granted, and that plaintiff's claims against this defendant be

dismissed with prejudice.

###### 3.        Deliberate Indifference To Serious Medical Needs.

Plaintiff argues that Dr. Coronado was deliberately indifferent to his serious medical needs because he did not "stitch" plaintiff's lacerations or take x-rays of his legs, but merely applied bandages to his injuries.

As the Supreme Court has explained "[d]eliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." Estelle v. Gamble, 429 U.S. 97, 105 (1976).  In order to state a claim of inadequate medical treatment, "a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 106.

A disagreement with the level and type of treatment is not actionable under the Eighth Amendment.  Id. at 107; Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997); Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).  An incorrect diagnosis does not state an Eighth Amendment claim because the deliberate indifference standard has not been met.  Domino v. Tex. Dep't of Crim. Justice, 239 F.3d 752, 756 (5th Cir. 2001).  A "plaintiff must show that the officials 'refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs.'"  Id. (quoting Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985)).  However, delay in treatment may be actionable under § 1983 if

there has been deliberate indifference and the delay results in substantial harm.

Mendoza v. Lynaugh, 989 F.2d 191, 195 (5th Cir. 1993); see also Stewart v.

Murphy, 174 F.3d 530, 537 (5th Cir. 1999) (citing Hudson v. McHugh, 148 F.3d

859, 864 (5th Cir. 1998)).

Here, the uncontested facts establish that plaintiff was escorted to the

infirmary shortly after reporting the alleged assault.  DX-C at 35.  At the infirmary,

Dr. Coronado examined plaintiff's wounds and then had them cleaned and

bandaged.  DX-D at 8.  Plaintiff fails to offer any evidence to suggest that his

injuries required any greater treatment then what he received.  His wounds were

each less than a centimeter in length.  Id.  He had good range of motion of his feet

and toes, and his Dorsalis pedis pulses were strong.  Id.  Although he claims that he

was in pain, he was currently receiving Motrin, 600 milligrams daily, for other

complaints.  Id.  In the days following the alleged assault, he did not complain of

pain associated with his injuries or the attack.  DX-C at 153, 156.  At most,

plaintiff disagrees with Dr. Coronado's course of treatment, and such a

disagreement is not actionable.  See Norton, 122 F.3d at 292; Banuelos, 41 F.3d at

235.

Plaintiff fails to state a constitutional violation against Dr. Coronado, and

therefore, the Court need not address whether Dr. Coronado's actions were

objectively reasonable under the circumstances.  See <u>Saucier</u>, 533 U.S. at 201.

Thus, it is recommended that defendants' motion for summary judgment to dismiss

plaintiff's claims against Dr. Coronado be granted, and that Dr. Coronado be

dismissed from this lawsuit.

## VI.  <u>CONCLUSION</u>

For the above-stated reasons, it is respectfully recommended that: (1)

plaintiff's claims against defendants in their official capacities for money damages

be dismissed as barred by the Eleventh Amendment; (2) defendants' motion for

summary judgment as to defendants Officer Loehr and Dr. Coronado be

GRANTED, and that plaintiff's claims against those defendants be dismissed with

prejudice; and (3) defendants' motion for summary judgment as to defendant

Officer Bolech be DENIED, and that plaintiff's excessive force against this

defendant proceed to trial.

Respectfully submitted this 27th day of February, 2006.

_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Rule 72(b) of the Federal Rules of Civil Procedure; 28 U.S.C. § 636(b)(1)(C); and Article IV, General Order No. 02-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (1996) (en banc).