IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DONALD HULL         TDCJ-CID #673637 | § § § | |
| V. | § | C.A. NO. C-05-043 |
| R. FORD, ET AL. | § § | |

## ORDER GRANTING DEFENDANT HUERTA'S MOTION FOR SUMMARY JUDGMENT

Pending is defendant Melinda Huerta's motion for summary judgment to dismiss plaintiff's action for failure to exhaust administrative remedies, or alternatively, on the merits. (D.E. 190). Plaintiff has not filed a response in opposition.[1] For the reasons stated herein, defendant's motion for summary judgment is granted, and plaintiff's claims are dismissed with prejudice for failure to exhaust administrative remedies. 42 U.S.C. § 1997e(a).

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. PROCEDURAL BACKGROUND

Plaintiff filed this lawsuit on January 25, 2005, claiming that certain Garza West officers and officials had violated his Eighth Amendment right to be free from cruel and unusual punishment.[2]

---

[1] Plaintiff requested, and was granted, two extensions of time to file his summary judgment response, but failed to do so. (D.E. 193, 195, 197). Pursuant to Local Rule 7.4, failure to respond is taken as a representation of no opposition.

[2] At the time of filing this lawsuit, plaintiff was an inmate in the Texas Department of Criminal Justice, Criminal Institutions Division ("TDCJ-CID"). He has since been released, but his claims concern events that occurred at the Garza West Transfer Facility in Beeville, Texas.

(D.E. 1, 12). Following an August 12, 2005, Spears[3] hearing, certain of plaintiff's claims against certain defendants were dismissed; the Court retained plaintiff's claims of deliberate indifference to his serious medical needs against Dr. Coronado and Nurse Gonzalez; his excessive force claim against Officer Bolech; and his failure to protect claims against Officer Loehr and Officer Jane Doe, who was later identified as Officer Melinda Huerta.[4] (D.E. 71, 88, 109).

On December 21, 2006, Officer Huerta filed the instant motion for summary judgment. (D.E. 190). She moves for judgment on the grounds that plaintiff has failed to exhaust his administrative remedies as required by 42 U.S.C. §1997e(a). (Id.) In the alternative, she argues that she is entitled to the defenses of qualified and Eleventh Amendment immunity. (Id.)

### III. SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of her motion for summary judgment, Officer Huerta offers the following evidence:

Ex. A: Plaintiff's grievance records from January 1, 2004 through May 23, 2005;

Ex. B: Plaintiff's medical records from April 14, 2004 through May 19, 2004; and

Ex. C: Plaintiff's medical records for March 26, 2004.[5]

The following facts are not in dispute:

---

[3] See Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985); see also Eason v. Holt, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a Spears hearing is incorporated into the pleadings).

[4] The other defendants also filed motions for summary judgment. Summary judgment was denied as to Officer Bolech and his appeal is pending with the Fifth Circuit. The Court granted summary judgment in favor of defendants Officer Loehr, Dr. Coronado, and Nurse Gonzalez.

[5] "DX" refers to defendant's exhibits, followed by the appropriate letter and page reference.

Plaintiff arrived at the Garza West Transfer Unit on March 3, 2004. His request for safekeeping status was denied, and he was housed in general population.

On March 25, 2004, plaintiff submitted a sick call request ("SCR") complaining of lower back pain. (DX-C at 5). In his SCR, he related that he had suffered back pain for almost twenty years.

On March 26, 2004, plaintiff was seen in the Garza Unit infirmary by Ruby Hinz, a nurse practitioner, for complaints of lower back pain. (DX-C at 3). Medical notes indicate that plaintiff had a history of scoliosis, with right hip raised. (Id.) Nurse Hinz' assessment was that left leg shorter than right, and her plan was to refer plaintiff to brace and limb for an evaluation within thirty days, and to add restrictions to his work detail. (Id.) She also prescribed Motrin for pain. (Id.)

On April 14, 2004, plaintiff was seen by Nurse Hinz complaining of allergies. (DX-B at 26). His examination was essentially normal, and he was continued on Motrin for back pain. (Id.)

On an unidentifiable date, plaintiff submitted a SCR stating that his left knee and lower back had been causing him considerable pain for the last forty-five days due to his top bunk assignment. (DX-B at 182). On April 22, 2004, Nurse Hinz responded that he would be seen the next day. (Id.)

On April 23, 2004, plaintiff was seen by Robert Carlisle, a nurse practitioner, for his complaints of low back pain and left knee pain. (DX-B at 175-180). Plaintiff related that he had surgery at age 10 on his left knee, and, following the surgery, the growth of his left leg slowed, making it shorter than the right. (Id. at 176). Upon examination, Nurse Carlisle noted spasms to the RSIJ area and legs. (Id.). Nurse Carlisie prescribed Robaxin, a muscle relaxant, and medically unassigned plaintiff, excusing him from work for one week. (Id.).

On April 29, 2004, plaintiff was assaulted by gang members. The assault stopped when Officer Huerta arrived on the floor. Officer Huerta did not take plaintiff to the infirmary.

On April 30, 2004, plaintiff returned to the infirmary for a follow-up visit for his back pain. (DX-B at 167). Plaintiff did not mention the assault of the day before. (Id.) Upon examination, Nurse Carlisle noted that plaintiff's back condition was unchanged. (Id.) He did not note any new injuries, bruises, contusions, or cuts. (Id.) He continued plaintiff on the Robaxin and ordered that plaintiff be medically unassigned for two weeks. (Id.).

On May 16, 2004, plaintiff submitted a SCR requesting medication for his allergies. (DX-B at 165). On May 17, 2004, plaintiff submitted a SCR complaining of lower back pain and left knee pain. (DX-B at 162).

On May 19, 2004, plaintiff was seen in the infirmary by Dr. Jose Coronado for his complaints of back pain, knee pain, and allergies. (DX-B at 161). Dr. Coronado prescribed Chlorphen and Motrin. (Id.).

## IV. SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52. In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motion. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002). The Court may not weigh the evidence, or evaluate the credibility of witnesses. Id.

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact. "[T]he substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id. at 248.

## V.  DISCUSSION

**A.    Failure To Exhaust Administrative Remedies**.

Officer Huerta moves for summary judgment arguing that plaintiff failed to exhaust his administrative remedies because he did not file a Step 1 or Step 2 grievance complaining about her allegedly deliberate indifference to his serious medical needs.

Prisoners are required to exhaust prison grievance procedures before filing suit in federal court. 42 U.S.C. § 1997e(a); Jones v. Bock, 127 S. Ct. 910, 914 (2007); Woodford v. Ngo, 126 S. Ct. 2378, 2382 (2006). The exhaustion requirement applies to all inmate suits about prison life, whether involving general circumstances or specific incidents. Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328, 330 (5th Cir. 2002). Moreover, a prisoner is required to exhaust his administrative remedies even if damages are unavailable through the grievance process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The Texas Department of Criminal Justice ("TDCJ") provides a two-step procedure for presenting administrative grievances.[6] A prisoner must pursue his grievance at both the Step 1 and Step 2 levels in order to exhaust his administrative remedies. See Johnson v. Johnson, 385 F.3d 503, 515 (5th Cir. 2004), citing Wright, 260 F.3d at 358.

The purpose of the exhaustion requirement is to alert prison officials of problems so that the prison has a chance to address the claims before they reach federal court. Woodford, 126 S.Ct. at 2388. As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

In his original complaint, plaintiff indicated that he had exhausted both steps of the TDCJ grievance procedure. However, a review of plaintiff's grievance records from January 2004 to the present shows that plaintiff did not file a grievance raising the claim that he raises herein: that Officer Huerta refused to take him to medical following the gang assault. At the evidentiary hearing, plaintiff testified that he was bleeding, with wounds to his nose, bottom lip, and left eye. He stated that the left-side of his face was swollen and bruised, and that he told Officer Huerta he was in pain, but yet she refused to take him to get medical attention. However, he has never filed a grievance raising this claim.

---

[6] Step 1 requires the prisoner to submit an administrative grievance at the institutional level. Wendell v. Asher, 162 F.3d 887, 891 (5th Cir. 1998) (citing to TDCJ Administrative Directive No. AD-03.82 (rev. 1), Policy, ¶ IV (Jan. 31, 1997)). After an investigation, the unit grievance investigator prepares a report and makes a recommendation to the final decision maker, which may be the warden, assistant warden, facility administrator, assistant facility administrator, or health administrator. Id. Step 2 permits the prisoner to submit an appeal to the division grievance investigator with the Institutional Division of the TDCJ. Id. After an investigation, the departmental grievance investigator prepares a report and makes a recommendation to the final decision maker for Step 2 of the process, which is the director, deputy director, regional director or assistant director. Id.

Plaintiff's grievance records show that two days *before* the gang assault, on April 27, 2004, he filed a Step 1 grievance, Grievance No. 2004128407, complaining that he was denied a unit transfer, and arguing that his life was in danger in general population. (See DX-A at 94-95). On June 22, 2004, he filed a Step 2 grievance, but he did not mention therein that he had been the victim of a gang assault on April 29, 2004. (See DX-A at 92-93).

In fact, there is no evidence, other than plaintiff's allegations, of the alleged April 29, 2004 assault. There is no written report of an assault. No other inmate has collaborated plaintiff's statement. Plaintiff does not claim that he reported the assault to another inmate or to a correctional officer or official.

Moreover, plaintiff was seen in medical the day following the assault for a scheduled follow-up visit regarding back pain, yet at that time, he did not mention that he had been assaulted the night before, nor did the examining nurse note any unusual injuries or bruises consistent with an assault the night before. (See DX-B at 167-68). Plaintiff testified at the evidentiary hearing that he had been assaulted for "10 minutes" by "seven Crip members and twelve Mexican Mafia" gang members. He also stated that he was bleeding and bruised, with injuries to the left-side of his face, left-eye, nose, and mouth. Even if Officer Huerta had not taken plaintiff to the infirmary the night of the assault, it is reasonable to assume that Nurse Carlise would have observed plaintiff's injuries the next day at the scheduled doctor visit if in fact the assault had occurred and that Nurse Carlisle would have then made a record of the assault. Plaintiff never complained about the assault, and more importantly, he never filed a grievance complaining that Officer Huerta failed to take him to the infirmary, such that he did not exhaust his administrative remedies.

Only two other grievances were filed within two months after the alleged gang assault: (1) Grievance No. 2004161669, Step 1 dated May 3, 2004, appealing a disciplinary case for failing to

7

turn out for work (DX-A at 105-06), and denied on June 24, 2004, with no corresponding Step 2 grievance filed; and (2) Grievance No. 2004176622, Step 1 dated May 25, 2004, complaining that on May 24, 2004, Officer P. Loehr, Ms. Guttierez, and Mr. Armstrong denied plaintiff's request to not work and to go to the infirmary instead (DX-A at 103-04), denied on July 8, 2004, with no corresponding Step 2 grievance filed. Neither of these two grievances concerns plaintiff's claim of deliberate indifference against Officer Huerta.

In failing to respond to defendant's summary judgment motion, plaintiff has failed to raise a genuine issue of material fact concerning exhaustion. The uncontested evidence establishes that he failed to file a grievance against Officer Huerta before filing his federal lawsuit. In proceeding with his federal lawsuit rather than exhausting administrative remedies, plaintiff sought relief to which he was not entitled, such that dismissal with prejudice to his proceeding *in forma pauperis* is warranted. See Underwood v. Wilson, 151 F.3d 292, 296 (5th Cir. 1998) (per curiam) (if an inmate chooses to file and pursue a lawsuit prior to exhausting administrative remedies, his suit must be dismissed with prejudice for purposes of proceeding *in forma pauperis)*.

## VI. **CONCLUSION**

Plaintiff failed to exhaust his administrative remedies against defendant Melinda Huerta. Accordingly, she is entitled to summary judgment in her favor, and her motion for summary judgment to dismiss for failure to exhaust administrative remedies (D.E. 190), is GRANTED. Plaintiff's claims against Officer Melinda Huerta are dismissed with prejudice.

The Court need not address defendant's qualified immunity defense.

ORDERED this 17th day of April 2007.

_____
Janis Graham Jack
United States District Judge